IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CLYDE ALLEN RIFE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 14-CV-333-GKF |
| | ) |
| OKLAHOMA DEPARTMENT | ) |
| OF PUBLIC SAFETY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This case comes before the court on remand. On appeal, the circuit panel determined that plaintiff Clyde Allen Rife established a genuine issue of material fact on his civil rights claims that defendants Joe Jefferson, Jonathon Willis, Chad Dale, and the McCurtain County Jail Trust (the "Remand Defendants") denied him medical attention during pretrial detention for injuries sustained in a single-vehicle motorcycle accident. *Rife v. Okla. Dep't of Pub. Safety*, 854 F.3d 637 (10th Cir. 2017). The panel remanded for decisions on the following narrow questions: (1) whether Mr. Rife's constitutional right to medical care was clearly established; and (2) whether a reasonable factfinder could identify a causal link between the McCurtain County Jail Trust's policies or customs and the violation of Mr. Rife's constitutional right, *id.* at 642.

**I. Legal Standard**

Summary judgment shall be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence permits a rational trier of fact to resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 644, 670 (10th Cir. 1998). A fact is "material" if it is essential to the outcome of the case. *Id.* On review, a court must examine the record in the light most

favorable to the party opposing summary judgment. *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995). But "the nonmoving party may not rest on its pleadings [and] must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). Indeed, bare allegations, without evidentiary support, will not suffice. *See Joe Hand Promotions, Inc. v. Kinder*, No. 11-CV-450-GKF-PJC, 2012 WL 5494926, at *2 (N.D. Okla. Nov. 13, 2012).

## II. Analysis

Section 1983 provides a cause of action against any person who deprives an individual of federal rights or liberties under color of state law. 42 U.S.C. § 1983. But qualified immunity operates as a complete defense. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). To defeat an assertion of immunity, a plaintiff must show that: (1) alleged conduct violated a constitutional right; and (2) the law clearly established that right at the time of the defendants' actions. *Shrum v. City of Coweta, Okla.*, 449 F.3d 1132, 1138 (10th Cir. 2006). Here, Mr. Rife has alleged a violation of his right to custodial medical attention by the Remand Defendants. *See Rife*, 854 F.3d at 647–54. As previously stated, the remanded questions are: (1) as to all Remand Defendants, whether those rights were clearly established; and (2) as to the McCurtain County Jail Trust, whether a causal link exists between its policies or customs and the violation of Mr. Rife's rights. *Id.* The court addresses each question in turn.

### A. Whether Mr. Rife's Right to Custodial Medical Attention Was Clearly Established

To find a clearly established right, the court need not conduct "a scavenger hunt for prior cases with precisely the same facts." *See Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). Rather, the relevant inquiry is "whether the law put officials on fair notice that the

described conduct was unconstitutional." *See id.* "[A] general constitutional rule" already in existence can 'apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful.'" *See Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation and citation omitted)). To that end, the court looks to Supreme Court decisions, Tenth Circuit precedent, and the "clearly established weight of authority from other [federal] courts." *See Dodds v. Richardson*, 614 F.3d 1185, 1206 (10th Cir. 2010).

"Pretrial detainees are not men without countries, persons without any clearly defined rights." *See Blackmon v. Sutton*, 734 F.3d 1237, 1240 (10th Cir. 2013) (emphasis omitted). Indeed, "[b]y 1997, it was beyond debate that a pretrial detainee enjoys *at least* the same constitutional protections as a convicted criminal." *See id.* at 1240–41 (emphasis in original). Such protections include "[t]he right to custodial medical care." *See Olsen*, 312 F.3d at 1315 (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). And "[w]here disputed material facts implicate . . . whether a serious medical need existed or whether an officer was deliberately indifferent to it, a court may not grant summary judgment." *See id.* at 1315–16.

Here, the circuit panel found the following facts give rise to an actionable deliberate indifference claim. With respect to defendant Jefferson, the trooper who transported Mr. Rife to jail: knowledge that Mr. Rife was involved in a motorcycle accident; the presence of grass stains on Mr. Rife's paints and shirt indicating he was thrown from his motorcycle; dried blood on Mr. Rife's nose; Mr. Rife's inability to remember the date, time, what he did that day, or his social security number; physical symptoms, including miosis, nystagmus, dizziness, and lethargy; statements by Mr. Rife that he felt sick and "floaty"; Mr. Rife's complaints about head and chest; and video-recorded evidence of Mr. Rife's groaning in Jefferson's squad car. *See Rife*, 854 F.3d

3

at 648–49.  With respect to defendants Willis and Dale, the jailhouse detention officers: knowledge that Mr. Rife was arrested for public intoxication; physical symptoms, including dizziness and confusion; the presence of grass stains on Mr. Rife's paints and shirt; dried blood on Mr. Rife's nose; the fact Mr. Rife was dazed; the absence of alcohol on Mr. Rife's breath; Mr. Rife's loud groaning and moaning as recounted in a fellow arrestee's declaration, which "unambiguously indicate[d] that Mr. Rife was obviously in pain when he entered the holding cell"; and the placement of Mr. Rife on medical observation.  *Id.* at 650–53.  Both sets of facts raise genuine issues of material fact as to the violation of Mr. Rife's rights under § 1983.  *Id.*

In briefing, the Remand Defendants did not seriously dispute that the right to medical attention was clearly established at time it was violated.  *See* [Doc. No. 43, pp. 29–30] (Mot. for Summ. J. of Defs. Tadlock, McClain, Dale, and Willis) (failing to raise "clearly established" argument); [Doc. No. 90, pp. 9–10] (Reply in Support of Mot. for Summ. J. of Defs. Okla. Dep't of Pub. Safety, Jefferson, McCurtain Cty. Jail Trust, Dale, and Willis) (failing to respond to Mr. Rife's "clearly established" argument).  But at a telephonic hearing held post-remand, they changed course, arguing the right to medical attention in these specific circumstances was not sufficiently particularized under newly established law—specifically, *White v. Pauly*, 137 S.Ct. 548 (2017), and *Aldaba v. Pickens*, 844 F.3d 870 (2016).

In this court's experience, new constitutional rules are not normally announced with language like: "[t]oday, it is again necessary to reiterate the longstanding principle," *White*, 137 S.Ct. at 552; or "[the court] repeated its earlier direction," *Aldaba*, 844 F.3d at 872.  To be sure, rights "should not be defined at a high level of generality."  *White*, 137 S.Ct. at 552 (quotation marks and citation omitted).  And "the violative nature of the *particular conduct* must be clearly established."  *Pickens*, 844 F.3d at 877 (quotation marks and citations omitted) (emphasis in

4

original). But "[a] prior case need not have identical facts." *See Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017). The question "is whether it would have been clear to a reasonable officer that his or her conduct was unlawful in the situation." *See id.* (quotation marks, citations, and alterations omitted).

Here, caselaw clearly establishes Mr. Rife's constitutional right to medical attention as a pretrial detainee for injuries sustained in a vehicle accident. *See, e.g.*, *Garcia v. Salt Lake Cty.*, 768 F.2d 303, 307–08 (10th Cir. 1985) (affirming jury verdict); *Barton v. Taber*, 820 F.3d 958, 965–67 (8th Cir. 2016); *Marquez v. Bd. of Cty. Com'rs Eddy Cty.*, No. 11-CV-838 JAP/WDS, 2012 WL 12895017, at *7–8 (D.N.M. Dec. 3, 2012) (denying summary judgment), *aff'd* 543 F. App'x 803 (10th Cir. 2013); *Kraft v. Laney*, No. CIV S-04-129 GGH, 2005 WL 2042310, at *20–23 (E.D. Cal. Aug. 24, 2005). And the fact Mr. Rife was suspected of intoxication does not change the result. Indeed, in many cases, individuals arrested for DUI will require medical attention for injuries sustained in an accident. *See Barton*, 820 F.3d at 965–67; *Marquez*, 2012 WL 12895017, at *7–8. It is the medical need, not the offense charged, that triggers a person's right to medical attention upon custodial arrest. *See Self v. Crum*, 439 F.3d 1227, 1230–31 (10th Cir. 2006); *Marquez*, 2012 WL 12895017, at *7–8. So, whether Mr. Rife was injured by the motorcycle accident—as defendant Jefferson should have known—or impaired from intoxication—as defendants Wallis and Dale believed—his symptoms clearly established a right to medical attention during his transport to and detention at the McCurtain County Jail. *See, e.g.*, *Garcia*, 768 F.2d at 307–08; *Barton v. Taber*, 820 F.3d at 965–67; *Marquez*, 2012 WL 12895017, at *7–8.

Because Mr. Rife has produced evidence upon which a reasonable jury could find deliberate indifference to his clearly established right to medical attention following a

motorcycle accident, defendant Jefferson is not entitled to summary judgment on his qualified immunity defense. *See Olsen*, 312 F.3d at 1315–16. And because Mr. Rife has produced evidence upon which a reasonable jury could find deliberate indifference to his clearly established right to medical attention when placed in a holding cell while "obviously in pain," defendants Willis, Dale, and the McCurtain County Jail Trust are not entitled to summary judgment on their qualified immunity defense. *See id.*

B. Whether a Reasonable Factfinder Could Find a Causal Link Between the Jail Trust's Policies or Customs and a Constitutional Violation

Mr. Rife asserts a § 1983 municipal liability claim against the McCurtain County Jail Trust. But such liability cannot be established on a vicarious or *respondeat superior* basis. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). Rather, Mr. Rife must show that a policy, custom, or practice of the jail trust was the "moving force" behind the alleged deprivation of his constitutional rights. *See id.* (citing *Bd. of Cty. Com'rs v. Brown*, 520 U.S. 397, 399 (1997)). In other words, he "must demonstrate a 'direct causal link' between the [jail trust's] action" and the alleged violation. *See id.* (citing *Brown*, 520 U.S. at 399)). That may be satisfied by a showing of inadequate training, which Mr. Rife alleges in ¶¶ 32, 47, and 49 of the Amended Complaint. *See id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)); [Doc. No. 68, pp. 6, 9, ¶¶ 32, 47, 49].

To establish liability through inadequate training, Mr. Rife must establish that such training "'amounts to a deliberate indifference to the rights of persons'" with custodial medical needs. *See id.* (quoting *Harris*, 489 U.S. at 385)). Deliberate indifference can be shown where "a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1999). That is true even absent a pattern of unconstitutional behavior. *See Olsen*, 312 F.3d at 1318. As with other

6

issues, the existence of a genuine dispute of material fact as to deliberate indifference precludes a grant of summary judgment. *See id.* (citing *Cruz v. City of Laramie*, 239 F.3d 1183, 1191 (10th Cir. 2001)).

Here, Mr. Rife alleges a genuine dispute exists as to training deficiencies related to inmate medical needs. *See Lopez v. Master*, 172 F.3d 756, 760 (10th Cir. 1999). Defendants contend that jail staff received state-approved in-service job training; that such training addresses inmate supervision, first aid, CPR, and how to respond to severe medical emergencies, including, head injury; that arrestees were required to complete a medical questionnaire upon booking; that arrestees were not to be admitted until the booking officer was satisfied that obviously necessary medical care was rendered; that emergency and non-emergency medical care was available to inmates on a daily basis; and that officers were to observe inmates on an hourly basis, or every fifteen (15) minutes if medically necessary. *See* [Doc. No. 22] (Staff Training Policy); [Doc. No. 23] (Medical Services Policy); [Doc. No. 28] (Holding Cell Surveillance Policy); [Doc. No. 29] (Health Screening Policy); [Doc. No. 30] (Health Appraisal Policy); [Doc. No. 31] (Emergency Medical Care Policy].

Mr. Rife does not dispute that the detention staff received training, but argues that such training was inadequate to effectuate the policies listed above. For instance, although Mr. Rife submitted a medical questionnaire, detention officers received no training on the completion or evaluation of that medical form . [Doc. No. 99-2, pp. 8] ("Q. Did the jail trust ever provide you with any training or instruction on how to fill out these medical questionnaires? A. No."); [*id.* at 8–9] ("Q. Did the jail trust ever provide you with any training or instruction on what you're to be looking for when filling out this medical questionnaire? A. No."). And evidence supports Mr. Rife's claim that the jail trust provided staff with little to no guidance on identifying inmate

7

medical needs; rather, it urged them to simply use "common sense." [Doc. No. 99-1, p. 8] ("Q. Does the jail provide any training in what the jail staff is to be looking for when they conduct the medical observation?  A. Really just common sense.").  In this way, despite the jail trust's prophylactic measures and the availability of on-call medical personnel, a reasonable factfinder could conclude that the McCurtain detention staff was inadequately trained to effectuate those policies or identify circumstances warranting medical attention.  *See Olsen*, 312 F.3d at 1319–20; *Beers v. Ballard*, No. 04-CV-860-CVE-SAJ, 2005 WL 3578131, at *8–9 (N.D. Okla. Dec. 29, 2005).

Because that deficiency concerns a "skill[ ] needed to handle recurring situations," there is "an obvious potential for constitutional violations."  *See Barney*, 143 F.3d at 1308; *see also Olsen*, 312 F.3d at 1319–20; *Beers*, 2005 WL 3578131, at *8–9.  It also bears a close nexus to the harm suffered by Mr. Rife in this case—denial of medical attention that resulted in head injury.  *See Fisher v. Glanz*, No. 14-CV-678-TCK-PJC, 2016 WL 1175239, at *13–14 (N.D. Okla. Mar. 24, 2016).  As a result, a reasonable jury could find causation, and a grant of summary judgment would be inappropriate.  *See Olsen*, 312 F.3d at 1320.

Mr. Rife's other theories of causation, however, lack merit.  Mr. Rife claims the McCurtain county jail was understaffed and unsupervised by medical personnel on nights and weekends.  But the record clearly establishes that a nurse and doctor were on-call, if not on site. *See* [Doc. No. 100-3] ("Q. So you say it was your understanding that . . . when the nurse wasn't working the late shift[,] the nurse was on call?  A. Yes."); [Doc. No. 99-4, p. 13] (Q.  Earlier Mr. Dale testified that in his time working at the jail he has never seen Dr. McHenry there.  Does that surprise you?  A. No. He works night shift.").  More fundamentally, "there is no *per se* requirement that a jail provide its inmates around-the-clock access to a medical doctor.  While

jailers are ultimately responsible for their inmates' medical needs, they can provide that care in a variety of ways, including access to trained personnel such as guards[.]" *See Boyett v. Cty. of Washington*, 282 F.App'x 667, 673 (10th Cir. 2008). The issue here is not that Mr. Rife wasn't observed—he was; the issue is whether observing officers were adequately trained to identify his medical needs and relay them to a medical professional. *Supra*, at 4–5.

Mr. Rife also claims that the jail trust failed to enforce policies necessary for the welfare of arrestees. But he offers no evidence of prior failures or a pattern and practice of disregarding jail medical policy. "Evidence of a single incident of unconstitutional activity is insufficient to" establish municipal liability. *See Smith v. Rogers Cty. Criminal Justice Auth.*, No. 05-CV-138-CVE-SAJ, 2005 WL 3298981, at *5 (N.D. Okla. Dec. 5, 2005) (citing *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996). For that reason, any "isolated" violation of Mr. Rife's rights cannot—as a matter of law—demonstrate the existence of "widespread and persistent violations that constitute custom." *See id.* (citing *Lankford*, 73 F.3d at 286).

WHEREFORE, the Remand Defendants' Motions for Summary Judgment [Doc. Nos. 41, 43, 94] are denied.

IT IS SO ORDERED this 16th day of June, 2017.

*[signature]*
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT